Alright, our second case today is number 19-11900, Claire Lambert v. Signature Healthcare, LLC, et al. And Ms. Colombo, we're ready whenever you are. Yes, thank you very much and good morning and may it please the court. We're before the court today on the appellant's interlocutory appeal stemming from the district court's order denying the motion to enforce an arbitration agreement. That arbitration agreement was entered into with a former employee and here, Ms. Lambert, who's the appellee. Against the backdrop of the enforceability of the arbitration agreement at issue is that there is a strong federal policy favoring arbitration along with vigorous enforcement of arbitration agreements. That policy exists in the employment context as in most every other context when a court evaluates an employment arbitration agreement. In fact, that was noted in the 11th Circuit case of Jones v. Waffle House as well as Epic System v. Lewis. Here, the lower court found that the employment arbitration agreement was unconscionable procedurally and substantively. It's our position that the lower court erred. The arbitration agreement at issue here was entered into in 2012 by Ms. Lambert and it remained in effect until her employment ended five years later. What is not at issue here very briefly is whether the claims are within the scope of the arbitration agreement as they are or whether the agreement was entered into voluntarily and or whether Ms. Lambert understood it. Those have not been challenged. But circling back to my opening, what is at issue is whether or not the agreement is unconscionable. To find unconscionability is fairly high standard and the court looks to Florida law. The district court's decision here, if followed, would create a fairly unrealistic and far-reaching standard in the context of enforcing arbitration agreements in the employment context. Mr. Colombo, let me interrupt you for a second and talk a little bit about the one aspect that I think from my perspective is really hard for you and that is substantive unconscionability due to lack of mutuality of obligation. The district court found that because Signature had the ability to revise, alter, and modify the employment agreement, including the arbitration clause, at any time, without any input or decision-making from the employee, there was no mutuality of obligation. Therefore, under Florida law, the whole agreement lacked enforceability and was substantively unconscionable. How do you respond to that aspect of the district court's decision? Thank you, Your Honor. Well, our response on that is that this is a high bar. To find substantive unconscionability is that the agreement has to be outrageously unfair to shock the judicial conscience. That was noted in the VoiceDream case, which we cited in the Florida 4 CCA. With respect to that particular point, first of all, the district court erred in reading these agreements together. The arbitration agreement was signed on June 8, 2012. The handbook and acknowledgement were signed 10 days later on June 18. The handbook refers to the arbitration policy generally. It doesn't verbatim incorporate the arbitration agreement. The arbitration agreement does not refer to the employee handbook or the acknowledgement. It was error to take those three and lump them together. That would be similar to any sort of situation where an employee is signing papers, maybe a confidentiality provision, a non-compete IT policy. At the same time that they're accepting employment, along with an arbitration agreement, all those must be read together. That's because they were entered into at the same time. Like I say, here the arbitration agreement did not refer to the handbook, but in any event... So you don't think that the arbitration agreement could have been changed by the employer at any time? No, because the arbitration agreement doesn't say that. The acknowledgement that references the handbook, which is really just saying acceptance, we received and understood the typical language, I received and understood the handbook, which does state that the handbook is only a brief summary of the policies and procedures and provides an overview of the company policy. The reference that the company may change or discontinue any policy in the handbook at any time, first of all, it doesn't mention the arbitration agreement. It also states that the handbook does not create or constitute a contract of employment. Ms. Lambert read that, understood it, and signed it. We've cited cases, a number of cases, coming out of the District Courts of Florida that are fairly similar. In our brief page 37, for example, the Lemon v. Lincoln case out of the Middle District of Florida, there there was an arbitration contract that actually existed in the handbook. The court held that that did not render it enforceable simply because the employer had the right to alter the handbook. The Herboso case is out of Southern District of Florida, a 2018 case. There there was a mandatory arbitration program that was explained in the handbook. There was a separate arbitration agreement as in this case. And the handbook contained an acknowledgment that stated that information in the handbook was subject to change, similar to this case, at the discretion of the employer. The court held that a potential future alteration in the handbook does not render the arbitration agreement illusory. We also cited the Vince case, which is fairly similar. Here, both parties were bound to the arbitration contract. Either party could file a demand for arbitration. If Ms. Lambert, as part of the conflict resolution program, filed a demand for arbitration, her employer, Signature Payroll, would be bound by it. Looking at the language of the arbitration agreement as well, it is a standard loan agreement. There's nothing in that language that says that Signature could unilaterally modify it. So our position is that that was an assumption by the district court, ignored the cases that have fairly well recognized that simply because the arbitration agreement is referenced in a handbook or even contained in a handbook doesn't mean that it lacks mutuality or is illusory, especially because it's something that could happen in the future. I think the court needs to look at the arbitration agreement itself. Ms. Colombo, this is Jill Pryor. If we reject your argument that the two documents have to be read separately, the handbook and the arbitration agreement, is your argument about the arbitration agreement not referencing the handbook still valid? In other words, would you still make that argument if we say that the two agreements have to be read together? Yes. Yes, Your Honor. And based on the cases that are referred to, even where arbitration agreements were part of the handbook, that were not only included but part of, that does not mean there's unequal bargaining power or that the contract is illusory. Because again, the arbitration agreement stands on its own. And there's no question here, it's not been raised, that Ms. Lambert didn't understand the arbitration agreement and that she didn't enter into it voluntarily for a period of five years. So, our position is that even if they are read together, as the other three cases and others in our brief acknowledge, that simply because a handbook, which is the general panorama of the company's policies and procedures could be altered, does not change the fact that the arbitration agreement, which is not challenged as being ambiguous, by the way, would contain a lack of neutrality or that it would be illusory. And counsel, what would your argument be, okay, so the problematic sentence is that signature may change or discontinue any policy in the stakeholder handbook or in, and this is the problematic language, any other signature writing or any other writing. Isn't your best argument that in interpreting from a grammatical standpoint, this sentence, this is simply an employee handbook, which is a very standard thing and that this sentence simply says that signature may change or discontinue any policy, whether the policy appears in the handbook or in any other writing. It's not referencing changing contracts, just company policies? Yes, Your Honor, exactly. It's referring to the handbook generally, which are policies and procedures. It doesn't talk about a contract. It's not challenged here that anything about the arbitration agreement is ambiguous either. Are there no more questions? I believe my time is up. All right, thank you very much. Thank you. Mr. Garcia. Good morning and may it please the Court. My name is Alejandro Garcia and I represent the appellee plaintiff in this matter, Claire Lambert. The uncontroverted evidence before the Court supports the finding that Ms. Lambert did not have a meaningful choice in agreeing to an arbitration agreement that the signature defendants could change or discontinue at any time without notice or consent.  There were two arguments in their brief regarding severability and the delegation clause. These arguments were waived. They were never presented to the District Court for consideration and this Court should not consider them. Since the Court is concerned with the substantive unconscionability analysis,  it's important to start the analysis by looking at the three documents that are in the record. The first document is the arbitration agreement itself, which specifically states that it is a condition of employment to sign the arbitration agreement. The next document is the handbook acknowledgement that, as your Honours have already noted, grants the signature defendants the right to change or discontinue any policy in the stakeholder handbook or other writing. And the way we interpret that provision is they can change or discontinue any policy in the handbook or they can change or discontinue any other writing and we respectfully submit that that is a reasonable interpretation of that language, which in and of itself is a reservation of the right to modify the arbitration agreement. However, if the Court wishes to read this as simply a right to modify policies in the handbook, it's important to look at the language in the handbook itself regarding arbitration. And that would be section 2.6 in the handbook that's attached to the signature defendants corporate representative's declaration in support of their motion to compel arbitration. And the pertinent language reads, and I quote, as a condition of employment, applicants and stakeholders must sign an arbitration agreement. Signed acknowledgement of receipt of the stakeholder handbook shall serve as acceptance and understanding of this condition of employment, thereby binding stakeholders to the arbitration agreement. So all of these documents concern the same subject matter and that is the signature defendants' official policy on arbitration, which I might also add the corporate representative testified on multiple occasions that it is the official policy of the signature defendants to require arbitration of disputes. So in reading all these documents together, which were executed at or near the same time concerning the same subject matter and the same transaction, namely the formation of the employer-employee relationship, the district court correctly concluded that these documents should be construed together and that the unilateral modification provision indisputably applies to the arbitration agreement itself. And we know that because execution of the handbook acknowledgement serves as formal acceptance of the arbitration agreement. The only conclusion in our view is that the signature defendants reserve the right to modify the arbitration agreement as they saw fit without notice or consent at any time. And in Florida, the lack of mutuality is evidence of substantive unconscionability. We rely on the Palm Beach Motor Cars v. Jeffrey case for this very proposition, wherein the purchaser of a vehicle signed a purchase agreement that had an arbitration agreement and the court found that because the consumer had to arbitrate the disputes and the dealer did not, there was a lack of mutuality, and this lack of mutuality was evidence of substantive unconscionability as distinguished from an issue of whether or not the contract was illusory. Illusory deals with consideration, and in this case, the court found that continued employment was adequate consideration so as to defeat any type of illusory argument. But instead, even if there's sufficient consideration, it does not change the fact that the unilateral modification provision is substantively unconscionable. And should this court affirm the district court's analysis, which we submit that it should, this court would be joining the Tenth Circuit, where it held that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope would render the contract unenforceable. So, Your Honors, I think the district court correctly found that there was sufficient evidence of substantive unconscionability by construing the documents together and finding that they concerned the same subject matter, arose out of the same transaction, and were executed at or near the same time. And I'd like to just briefly address some of the cases that the appellants relied on in challenging the substantive unconscionability analysis. It's important that the court take a very close look at the language in the handbooks of those cases and the language of the handbook in this case. In the Herboso case, for example, the disputed language was as follows, and I quote, The information contained in this handbook is subject to change at any time and at the sole discretion of Pollo Tropical. In Lemon, the pertinent language was, and I quote, I understand that the handbook will be updated from time to time and that I will be responsible for receiving and reading any revisions. These cases deal with your run-of-the-mill reservation to simply update a handbook, wherein it may say one thing one day and something the next, and that's not going to be an issue. But the reservation here is a country mile away from these cases because we actually have the arbitration agreement in the handbook and the handbook saying that execution of the acknowledgement, which contains the offending provision, is a part of the arbitration agreement. And so, with that said, I'd like to transition then to the district court's analysis regarding procedural and conscionability. In this case, the district court correctly concluded that Ms. Lambert lacked a meaningful choice in assenting to the terms of the arbitration agreement and correctly found sufficient evidence of procedural and conscionability. In the employment context, the bargaining power is almost always uneven, and so the analysis really turns on whether there's sufficient evidence to find that the employee had meaningful choice based on a totality of the circumstances. Mr. Garcia, did Signature submit any evidence on that point, or was Ms. Lambert's testimony the only thing before the district court on that issue? Well, Ms. Lambert's testimony was the only point on the issue. However, I think it's important to look at what the district court relied on in determining what was material. The district court found, first of all, that the arbitration agreement was presented on a take-it-or-leave-it basis. And on that fact, the district court relied on the Signature defendant's own testimony, where they made very clear Ms. Lambert would not have been offered if she did not sign the arbitration agreement. Now, it's indisputable that in the employment context, offering an arbitration agreement on a take-it-or-leave-it basis is not per se unconscionable. So the district court went to the next step and looked at Ms. Lambert's other employment options. Because if we're going to look at meaningful choice and whether or not we're looking at taking it or leaving it, I think it's appropriate to say whether or not the employee had a realistic, a meaningful opportunity to leave it on the table. And I'll begin by looking at some of the consumer cases where it's almost inconceivable to think of a situation where the consumer could not leave the arbitration agreement because it's a purchase of goods. If you don't want the TV, you go somewhere else. However, the circumstances in the employment context are much more real as specifically highlighted by the uncontroverted facts of this case. But counsel, under your argument, under your theory then, in the employment context, wouldn't all of these contracts, these arbitration agreements, be unconscionable? Absolutely. Particularly in periods of high unemployment where people don't have a lot of opportunities? Absolutely not, Your Honor, because it's a multifaceted analysis. You don't get to lack of employment options unless it's a condition of employment, the arbitration agreement. And then even if we look to an employee's lack of employment opportunities and find procedural unconscionability, you still need substantive unconscionability. Right, but you just said, your first statement was if the arbitration agreement is a requirement of employment. Let me just say, in my hypothetical, if an arbitration agreement is a condition of employment, under your theory, isn't it going to necessarily always be unconscionable? No, Your Honor, again, because in Florida, you need both procedural and substantive unconscionability. But you're saying that in an employment context then, it is always procedurally unconscionable under your theory? No, Your Honor, absolutely not, because it's an analysis on a case-by-case basis based on a totality of the circumstances and the record evidence before the district court. In this case, Ms. Lambert was unemployed for six months, submitted job applications two weeks at a time, and received no offers of employment. And by the time she got an offer of employment from the signature defendants, it was either take the job or retire early and incur financial penalties by drawing down on her retirement accounts. But under Florida law, the touchstone of unconscionability analysis is whether a contract is shocking to the conscience and monstrously harsh. How does she show that her circumstances meet that extraordinary standard? Well, so, Your Honor, I think that my interpretation of the law is that specific recitation would apply to substantive unconscionability, and it is the reservation of the right to unilaterally modify who has to arbitrate and what needs to be arbitrated that shocks the conscience. In Florida, the unconscionability analysis is on a shifting scale where if you find sufficient evidence of substantive unconscionability, you do not need equal parts procedural. And respectfully, I submit that the record before this court would not create some unworkable standard in terms of procedural unconscionability because the employee would still have to substantiate that to the satisfaction of the district court. And this would be a good starting point. If you contrast it with the facts of some of the other cases, there was literally no evidence of a job search in the record. Now, will this create an avenue for employees to challenge procedural unconscionability? Sure, but it's still going to need to be under oath and supported by competent substantial evidence, which in this case, there was competent substantial evidence. Now, the signature defendants also take issue with the fact that they never had a chance to depose Ms. Lambert or take discovery from Ms. Lambert, but much like their delegation and severability arguments, Counsel, two minutes, please. they never requested any discovery from Ms. Lambert and, in fact, opposed it at every step of the way. In their opposition, I'm sorry, in their motion to stay discovery in this case, they specifically said in the court record, we do not believe discovery is appropriate. So they cannot be heard to complain that they did not have a chance to challenge the weight of Ms. Lambert's evidence when they were perfectly fine with having a district court rule on the papers submitted by the party. This issue was briefed in full twice, and not once. Did they ever request any type of discovery from Ms. Lambert? So the district court was correct in finding substantial evidence of procedural unconscionability. And lastly, I would just like to address this issue of the presumption in favor of arbitration. The Supreme Court has held that unconscionability is a defense to formation, and this circuit has held that the presumption in favor of arbitration does not apply to whether or not a valid... I see my time has expired. May I briefly conclude? Yes, go right ahead. And so this court has specifically said that the presumption does not apply to whether or not a valid arbitration agreement was formed. And so in closing, we ask this court to affirm the lower court's decision in finding both procedural and substantive unconscionability, and affirm the district court's denial of the appellant's motion to compel. Thank you. Thank you very much, Mr. Garcia. Ms. Colombo, you have your time for rebuttal. All right, thank you very much. I'd like to address first plaintiffs... I'm sorry, plaintiffs. I'd like to address first the appellee's reference to consumer contract cases, which is what the appellee primarily relies upon for lack of neutrality. We cited cases in our brief, Rose here, and in this case, the middle district of Florida, that very accurately say agreements in the consumer context are misplaced as suspensions exist between employees and consumers of goods and services when analyzing unequal bargaining power. With respect to the procedural argument as to procedural unconscionability, here adopting the appellee's standard would create an untenable hurdle for employers to enforce arbitration agreements. Essentially, the district court relied upon the fact that the appellee submitted an affidavit saying she had financial difficulties that prevented her from a meaningful choice in accepting the arbitration agreement as a condition of employment. That affidavit or declaration in and of itself only states that she looked for work for approximately six months. It does not state she lacked other employment alternatives if she refused the job. And it also states that if she didn't find a job, she would have to retire early and incur financial penalties. It doesn't state when she would need to find a job. She doesn't state she was draining her financial account. She doesn't state what those incurring penalties are or the significance of those penalties. And if we apply that analysis, and the court adopts that analysis from the district court, which didn't cite any case law or employment cases, by the way, then, you know, especially in this time frame, in a pandemic where there's so many people out of work that are looking for jobs, and simply can't find jobs, there's not as many available, have financial difficulties, as Ms. Lambert, that would put employees in the position of being able to challenge, on a procedural and cautionability basis, arbitration agreements to which the employer, in this case, would have no idea which ones are enforceable and which ones are not. Isn't your argument weakened a bit by the fact that you did not put on any actual evidence or seek to take discovery on this issue? In other words, you've got a, it seems to me, putting aside the legal issues, you've got a one-sided or potentially one-sided evidentiary record on procedural unconscionability. Now, that doesn't mean that you lose, but it does indicate that, factually, there's nothing else except Ms. Lambert's testimony on that issue. So, how do you fare, given the record? Thank you, Your Honor, for the question. When an employer files a motion to compel arbitration, as in this case, we have to be careful that we don't waive any of our rights to enforce arbitration. So, we agreed, actually it's referenced in our motion to say papers, that while we don't believe full merit discovery, which is what the appellee had served on as appropriate, limited discovery on enforceability would be sufficient. But on that record, we also said that just the affidavit submitted by Ms. Lambert was not sufficient in and of itself. I mean, we really felt that way just looking at it. It did not meet the standard to show procedural unconscionability. But plaintiff's appellate counsel objected to any state of discovery, including merit discovery. Unfortunately, the court did not rule on the motion to stay until the same day that the court ruled on the motion to enforce the arbitration provision. So, you know, unfortunately, it left us at that point without the opportunity then if that's what the court was going to rely upon was her affidavit in and of itself, which again, we did not feel that meets the standard for procedural unconscionability that she was out of work for six months approximately and was having difficulty finding a job and may have to suffer financial penalties from her 401K account, for example. That doesn't meet the standard for procedural unconscionability. But in and of itself, the court did delay in ruling on the motion to stay. We were mindful that this particular judge, Judge Millbrook, had a prior decision in Internazi de Mexico where the court stated that exchanging information can be viewed as substantial participation in the litigation. So we were mindful of that. We cited that. I've had other cases where we've, you know, the court sets these matters for evidentiary hearing. If there were issues of fact, here the court did not do that, and again, didn't rule on the motion until the same day as the motion to enforce. So it put us in a rather difficult position because we did not want to concede her affidavit was sufficient at all or in and of itself, and we don't believe that it is. But in any event, you know, to adopt going back to the standard, I mean, arbitration agreements on employment contacts are typically offered as a condition of employment, and that's recognized in the Cayley's 11th Circuit case. In the Gilmer case, just because there's some inequality in the bargaining power between the parties, you know, that doesn't mean that the arbitration agreement is unenforceable. And Cayley versus Goldstein 11th Circuit case in 2005, you know, specifically said that compulsory arbitration agreements are common in the workplace, and it's not unlawful for an employer to require an employee to arbitrate employment-related claims. But I just wanted to circle back that if we adopt, if the court adopts the argument by the district court, employers are really going to be left with questions of whether the arbitration agreements are going to be enforceable simply because somebody was out of work. Even if we know that somebody was out of work, we have no idea what their financial circumstances are. I mean, those were really the two bases that the court relied upon whether there was alternative evidence to be submitted or not. And if we had the opportunity to submit alternative evidence, I think the proper thing would have been an evidentiary hearing. But, you know, again, the motion was held upon at the same time as the motion to enforce the arbitration agreement. But at the end of the day, just looking at the affidavit itself, I think it does not meet the standard because it does not show that Ms. Lambert did not have any other alternative in employment, only that she'd been looking for a job for approximately less than a year and she may suffer some financial difficulties. That's all it says, and that doesn't meet the standard to show that she had absolutely no other alternative. So as Appley noted, there has to be procedural and substantive unconscionability that can't just be one or the other. Here, it's our position that the district court erred when it found there was both procedural and substantive unconscionability. And if there are no other questions, we would request that the court reverse the district court's decision and compel arbitration in this case. All right, Ms. Colombo, Mr. Garcia, thank you both very much. We appreciate the help. Thank you. Thank you, Your Honor.